# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BABBAGE HOLDINGS, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | Case No. 2:13-CV-750-JRG |
| ACTIVISION BLIZZARD, INC., et al., | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Defendants Activision Blizzard, Inc., Blizzard Entertainment, Inc., and Activision, Inc. (collectively "Activision")'s Motion to Transfer Venue to the United States District Court for the Northern District of California (Dkt. No. 30, filed March 4, 2014.) Activision moves the Court to transfer this case to the Northern District of California under 35 U.S.C. § 1404(a).

This is one of many cases filed by Plaintiff Babbage Holdings, LLC alleging infringement of U.S. Patent No. 5,561,811 (hereinafter "'811 patent") in this Court. The '811 patent relates to a multi-user multi-device system enables more than one user to control a single screen. Each user controls stored applications using one or more input devices, and the system produces a consistent view of all the applications on a single screen.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is

sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Van Dusen*, 376 U.S. at 622 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)) "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Section 1404(a) requires this discretionary "individualized, case-by-case consideration of convenience and fairness." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (quoting *Van Dusen*, 376 U.S. at 622).

## DISCUSSION

Activision asks this Court to transfer this case "for the reasons articulated in the motion to transfer filed by defendants in the Related Matters . . . ." (Mot. at 1.) As the movant, Activision bears the burden of showing that the Northern District of California is a clearly more convenient venue for *this* case. Activison's two-page Motion makes no real attempt to do so, and the Court declines to comb through the analysis provided in other cases to assemble an argument on Activision's behalf. In addressing Activision's Motion to Transfer, the Court only considers the evidence presented by Activision in its briefing.

**A.     Proper Venue**

The Northern District of California and the Eastern District of Texas are proper venues.

**B.     Private Interest Factors**

**1.     Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Activision provides a February 28, 2014 declaration by Mr. Marcus Iremonger, Senior Producer, at Activision Publishing, Inc., which is not a party to this case. (Dkt. No. 30-1.) According to Mr. Iremonger "Activision Blizzard, Inc. ('Activision Blizzard') is the parent company to Activision Publishing, Inc. ('Activision') and Blizzard Entertainment, Inc. ('Blizzard')." (*Id.* at 1.) "Activision Blizzard's and Activision's headquarters are located in Santa Monica, California and Blizzard's headquarters is located in Irvine, California."[1] (*Id.*) "Blizzard was not involved in the design or development of Call of Duty: Modern Warfare 3." (*Id.*) "I understand that Activision, Inc. is no longer active and was renamed Activision Blizzard, Inc. in July 2008." "The design and development of Call of Duty: Modern Warfare 3 was performed principally by Activision wholly-owned subsidiaries Infinity Ward, Inc. in Woodland Hills, California, Sledgehammer Games, Inc. in Foster City, California and Raven Soft in Madison, Wisconsin."[2] (*Id.* at 2.) "Any documents within Activision's and Activision Blizzard's

---

[1] Santa Monica and Irvine, California are located in the Central District of California.

[2] Woodland Hills, California is located in the Central District of California; Foster City, California is located in the Northern District of California; and Madison, Wisconsin is located in the Western District of Wisconsin.

possession regarding the design and development of Call of Duty: Modern Warfare 3 reside at Infinity Ward in Woodland Hills, at Sledgehammer Games in Foster City, at Raven Soft in Madison, Wisconsin and at Activision's headquarters in Santa Monica, California." (*Id.*) "Any quality assurance testing for Call of Duty: Modern Warfare 3 was performed in Foster City, Woodland Hills, El Segundo and/or Santa Monica, California; Madison, Wisconsin; Canada; or Ireland." (*Id.*) "Documents relating to quality assurance can be found at Activision's office in Santa Monica, California as well as its subsidiaries' offices in Foster City, Woodland Hills and El Segundo, California; Madison, Wisconsin; Canada and Ireland." (*Id.*) "Activision Blizzard and its subsidiaries maintain offices in numerous places around the world and country, including an office in both Dallas and Austin, neither of which are in the Eastern District of Texas and neither of which were involved in the development or quality testing of Call of Duty: Modern Warfare 3." Mr. Iremonger also declares that "Activision Blizzard employees knowledgeable about and prospective witnesses relating to the sales and marketing of Call of Duty: Modern Warfare 3, such as Rob Kostich, work in Santa Monica, California" and that he is knowledgeable about the production of Modern Warfare 3 and works in Santa Monica, California.

Babbage is a Texas limited liability company whose principal and representatives are all located in Dallas, Texas. Babbage represents that its documents are located in Dallas, Texas. Babbage provides charts detailing numerous potential party and non-party sources of evidence in the U.S. and whether or not this forum is closer for those parties. Babbage argues that "Activision Blizzard has studios in California, Wisconsin, New York, Iowa, Minnesota, and Austin, Texas" and a sales office in Dallas, Texas, and that "Blizzard Entertainment also has offices in Austin, Texas."

Activision argues that the Babbage's charts address video games that were not specifically listed in Babbage's complaint. Activision's argument—that Babbage's complaint is limited to specifically accused games—is somewhat perplexing as Babbage's complaint accused both Activision's video games that practice the '811 patent generally and a specific exemplary game. The Court is concerned that, if Activision is operating under a theory that the case only concerns the specifically accused game and not Activision's video games generally, relevant evidence might have been excluded. For example, Activision's evidence is directed only to the exemplary accused game—Modern Warfare 3. It appears to the Court that other Activision offices, such as those in New York, Iowa, Minnesota, and Texas, were excluded from Activision's analysis because they were not tied to the exemplary Modern Warfare 3 game. This gives the Court little confidence that Activision's other offices are not relevant to Babbage's complaint.

The weight of the evidence presented by Activision for this factor does not meet its burden. This factor weighs against transferring to the Northern District of California.

### 2. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is

no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

Activision's Motion only recites witnesses, including two specific witnesses, in the Central District of California. Activision argues that the Northern District of California is more convenient for specific potential third party witnesses.

Babbage provides the names of five specific potential witnesses in Dallas, Texas. Babbage provides charts detailing numerous potential party and non-party sources of evidence in the U.S. and whether or not this forum is closer for those parties. Activision argues Babbage's charts use "creative" calculations, because they count each location once instead of counting a location multiple times for each "function" Activision ascribed to a location (e.g. development, testing, and/or publishing).

The weight of the evidence presented by Activision for this factor does not meet its burden. This factor weighs against transferring to the Northern District of California.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor weighs in favor of transfer.

### 1  4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Activision argues that its relevant witnesses, apparently all in the Central District of California, would have to travel a shorter distance to reach the Northern District of California than they would to reach the Eastern District of Texas. (Mot. at 2.)

Babbage provides evidence that its Dallas, Texas witness would have to travel a shorter distance to reach the Eastern District of Texas than they would to reach the Northern District of California. Babbage provides evidence that this District would be a less expensive venue for traveling witnesses. Babbage provides charts detailing numerous potential party and non-party

sources of evidence in the U.S. and whether or not this forum is closer for those parties. Babbage argues that this suit is one of twelve cases before this Court concerning infringement of the '811 patent, and that judicial economy weighs in favor of trying those cases in the same court.

The weight of the evidence presented by Activision for this factor does not meet its burden. This factor weighs against transferring to the Northern District of California.

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). This factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Activision argues that the difference in time-to-trial between the venues is insignificant. Babbage argues that time to trial is six months faster in this District than it is in the Northern District of California, and that this Court has already held a scheduling conference and provided the case with a schedule.[3]

---

[3] Federal Court Management Statistics for the twelve months ending in September 30, 2013, which appear to be the closest available to this case's filing date (September 23, 2013), recite a median time to trial of 20.5 months in this District and 27.4 months in the Northern District of California. *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2013.aspx (last visited September 25, 2014.)

The weight of the evidence presented by Activision for this factor does not meet its burden. This factor weighs against transferring to the Northern District of California.

### 2. Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205-06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation."

The weight of the evidence presented by Activision for this factor does not meet its burden. This factor weighs against transferring to the Northern District of California.

### 3-4. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

These factors are neutral.

## CONCLUSION

A movant seeking to transfer bears the evidentiary burden of establishing that the movant's desired forum is clearly more convenient than the forum where the case was filed. Having considered the evidence presented by the Parties in view of the applicable law, the Court finds that the weight of the evidence presented by Activision does not meet its burden of establishing that the Northern District of California is a clearly more convenient forum than the Eastern District of Texas. For the reasons set forth above, the Court hereby **DENIES** Activision's Motion to Transfer Venue to the United States District Court for the Northern District of California (Dkt. No. 30).

**So ORDERED and SIGNED this 1st day of October, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE